UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JASON R. BOHLINGER,

    Plaintiff,

  v.              CAUSE NO. 3:21-CV-588 DRL-MGG

RON NEAL *et al.*,

    Defendants.

## OPINION AND ORDER

Jason R. Bohlinger, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915A, the court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. The court bears in mind that "[a] document filed *pro se* is to be liberally construed[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Mr. Bohlinger alleges that on July 31, 2019,[1] he got in an argument with Lieutenant Adrianne Gordon Ball about some of his personal property. Lieutenant Ball told him to

---

[1] The court has considered that suits filed under 42 U.S.C. § 1983 borrow the statute of limitations for state personal injury claims, which in Indiana is two years. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The complaint was electronically filed on August 10, 2021, which is more than two years after the events he describes. However, Mr. Bohlinger signed the complaint on May 25, 2021, and it would be deemed "filed" under the prison mailbox rule as soon as he gave it to prison officials for filing. *Houston v. Lack*, 487 U.S. 266 (1988). It appears there may have been some delay in filing the complaint by prison staff due to an extended lockdown at Indiana State Prison. Such delay would not be attributable to Mr. Bohlinger. *Id.* Untimeliness is an affirmative defense, and dismissal at the pleading stage is not appropriate unless it is clear from the face of the complaint that the action is untimely. *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015); *Cancer

"cuff up," or submit to being handcuffed, but he refused because Lieutenant Ball was planning to take all of the property out of his cell, including his mattress. He claims that "out of nowhere" Lieutenant Ball sprayed him in the face with chemical spray, causing him severe pain and burning in his eyes. He then submitted to being handcuffed.

Officer Batsel (first name unknown) and an unnamed officer arrived to escort him to a different cell. He claims they began to "pull and yank" on his handcuffs without warning. He states he turned around to ask why they were handling him so roughly, when they slammed him to the ground on his chest. While he was on the floor lying face-down and in handcuffs, Lieutenant Ball allegedly ran up and slammed her knee into his face, breaking one of his front teeth. The three officers then proceeded to drag him down the hall "on his face," causing him to break another tooth. He claims that he was pulled in this manner for approximately 50-75 feet. He further alleges that they would not allow him to take a shower even though he still had chemical spray on his face, which caused considerable pain.

He was then placed in a "sealed-off box-car type cell" for 16 days by Captain Bootz (first name unknown), where he had no access to water, no hygiene items, and no eating utensils. He was not allowed to brush his teeth or wash his hands after going to the bathroom.[2] He states that he repeatedly complained about these conditions and asked

---

*Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). That standard is not satisfied here.

[2] It appears that he had a working toilet in his cell but no sink or other access to water.

2

Captain Bootz to be taken to the medical unit for his broken teeth, but the captain allegedly ignored him.

Under the Eighth Amendment, inmates cannot be subjected to excessive force. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.*

Here, Mr. Bohlinger admits that these events began when he refused an order from Lieutenant Ball to submit to handcuffs. "Inmates cannot be permitted to decide which orders they will obey, and when they will obey them." *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). Nevertheless, giving him the inferences to which he is entitled at this stage, he alleges that he was not physically resisting, and that she used more force than was necessary to gain his compliance by immediately spraying him in the face with chemical spray without any warning. He further alleges that Lieutenant Ball kneed him in the face when he was on the ground in handcuffs and broke his tooth, and that Officer Batsel threw him to the ground and dragged him on his face for 50-75 feet, breaking another tooth. He also alleges that these officers did not allow him to rinse the chemical spray off his face, which caused him considerable pain. Further factual development may show that the use of force was reasonable under the circumstances, but he has alleged

3

enough to proceed against Lieutenant Ball and Officer Batsel on a claim for excessive force.³

The Eighth Amendment also prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate hygiene and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). "Some conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gillis*, 468 F.3d at 493. Additionally, "[a]n adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation even if it would not be impermissible if it were only a short-term problem." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). On the subjective prong, the prisoner must show that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834.

Here, Mr. Bohlinger alleges that for 16 days, he had no hygiene items or access to water, and could not brush his teeth or wash his hands after using the toilet. He further alleges that because he had no eating utensils, he had to eat with his hands during this period even though they were unclean. This combination of circumstances adequately alleges the denial of the minimal civilized measures of life's necessities. Mr. Bohlinger alleges that Captain Bootz was the one who put him in this cell and then ignored his

---

³ Mr. Bohlinger does not name the unidentified third officer involved in this incident as a defendant.

4

complaints about these conditions. He will be permitted to proceed against Captain Bootz for denying him adequate hygiene and sanitation.

The Eighth Amendment also entitles inmates to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must allege (1) he had an objectively seriously medical need and (2) the defendant acted with deliberate indifference to that need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. "[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted). "Dental care is one of the most important medical needs of inmates." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001); *see also Maddox v. Jones*, 370 F. App'x 716, 719 (7th Cir. 2010). Among other things, untreated dental problems can lead to infection or affect an inmate's ability to eat. *Wynn*, 251 F.3d at 593; *Farnham*, 394 F.3d 480.

Mr. Bohlinger alleges that two of his teeth were broken, and that he requested several times to be seen by medical staff, but for 16 days Captain Bootz ignored his

5

complaints, causing him pain and suffering. The complaint can be read to allege that his lack of access to a toothbrush or toothpaste during this period further exacerbated his dental issues. He will be permitted to proceed on claim against Captain Bootz for the denial of medical care.

Mr. Bohlinger also sues Josh Wallen, who appears to be the grievance officer at the prison. He alleges that this defendant failed to properly "process, review, and investigate" his grievances complaining about these events. The Constitution does not require that prisons provide a grievance procedure at all, nor does the existence of an internal complaint procedure create any constitutionally guaranteed rights. *Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016). Mr. Bohlinger does not allege, nor is there any plausible basis to infer, that the grievance officer caused the use of excessive force or the unsanitary conditions, or that he stood in the way of these issues being resolved by the responsible staff members. "The most one can say is that [he] did nothing, when [he] might have gone beyond the requirements of [his] job and tried to help him." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). This does not state a claim under section 1983.[4] *Id.* Accordingly, the grievance officer will be dismissed.

Finally, Mr. Bohlinger sues Warden Ron Neal as the top official at the prison. Liability under 42 U.S.C. § 1983 is based on personal responsibility, and the Warden cannot be held liable for the misdeeds of other prison staff simply because he oversees

---

[4] Mr. Bohlinger asserts that the grievance officer's actions prevented him from exhausting his administrative remedies in accordance with 42 U.S.C. § 1997e(a). If exhaustion becomes an issue at a later stage, Mr. Bohlinger is free to argue that he was prevented from exhausting. However, his allegations do not give rise to an independent constitution claim. *Daniel*, 833 F.3d at 736.

operations at the prison. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks*, 555 F.3d at 596. Supervisory prison staff can be held liable for deliberate indifference if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). There is no plausible basis in the complaint to infer that Warden Neal was personally involved in these events, that he knew the officers were using excessive force against Mr. Bohlinger or housing him in unsanitary conditions, or that he actively condoned or facilitated their actions. The fact that Mr. Bohlinger wrote to the Warden to complain about these events after the fact is not a basis for imposing personal liability on him. *Burks*, 555 F.3d at 596.

It appears Mr. Bohlinger is also trying to hold the Warden liable in his official capacity. An official capacity suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978). In effect, a suit against an officer of a state agency in his official capacity is a suit against the state, and the state is not a "person" that can be sued for constitutional violations under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989); *Foreman v. Wadsworth*, 844 F.3d 620, 624 n.1 (7th Cir. 2016). The Eleventh Amendment also precludes Mr. Bohlinger from suing the state for damages in federal court. *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 565 (7th Cir. 2019).

The Eleventh Amendment would not bar a claim for injunctive relief, *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997); but, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed. Any remedial injunctive relief granted by the court "must be narrowly drawn, extend no further than necessary to

7

remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted). Here, Mr. Bohlinger seeks sweeping forms of injunctive relief, including an order closing down all of the "box car" type cells at Indiana State Prison, and an order requiring the adoption of measures related to the use of excessive force by prison staff. However, there is no indication from the complaint that he is being subjected to an ongoing constitutional violation. *See Marie O.*, 131 F.3d at 615. A plaintiff is entitled to prospective injunctive relief only if "there exists some cognizable danger of recurrent violation, something more than the mere possibility." *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009), *abrogated on other grounds by Jones v. Carter*, 915 F.3d 1147, 1149 (7th Cir. 2019). A theoretical possibility "supported only by speculation" will not suffice. *Id*. There is no basis in the complaint to presume that Mr. Bohlinger will return to the cell where he was housed for two weeks in August 2019, and it would also be speculative to presume that he will again get into an altercation with guards and be subjected to alleged acts of excessive force. To the extent he is trying to seek relief on behalf of other prisoners, he is not permitted to do so. *Massey v. Helman*, 196 F.3d 727, 739–40 (7th Cir. 1999). Therefore, the Warden will be dismissed.

For the reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Lieutenant Adrianne Gordon Ball and Officer Batsel (first name unknown) in their personal capacities on a claim for monetary damages for using excessive force against him on July 31, 2019, in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against Captain Bootz (first name unknown) in his personal capacity on a claim for monetary damages for denying him needed medical care and housing him under sanitary conditions during a 16-day period in August 2019 in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Warden Ron Neal and Josh Wallen;

(5) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Lieutenant Adrianne Gordon Ball, Officer Batsel (first name unknown), and Captain Bootz (first name unknown) at the Indiana Department of Correction and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(6) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available;

(7) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Lieutenant Gordon Ball, Officer Batsel, and Captain Bootz to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

September 16, 2021              *s/ Damon R. Leichty*
                                Judge, United States District Court